U.S. v. Miranda-Camarena 14-1265 Good morning. Is it Duesberger? Duesberger, yes. I represent Jesus Miranda-Camarena in this appeal. May it please the court. Mr. Miranda argues that the district court procedurally erred at sentencing in two respects. First, by failing to consider his principal arguments in mitigation under 3553A. And second, failing to make an individualized assessment of his case. And correspondingly, that the sentence imposed was unreasonable. First, both this court and the Supreme Court have made perfectly clear that at sentencing the sentencing judge must specifically address and give thorough consideration to the defendant's principal arguments in mitigation. They are arguments with colorable legal merit and a factual basis. And then sufficiently explain his sentence enough to show this court that the judge has both specifically addressed and thoroughly considered the defendant's arguments. Here, however, at sentencing, the sentencing judge did not mention any of Mr. Miranda's principal arguments in mitigation. Instead, he passed over them in silence as the government concedes in their brief. Mr. Miranda's principal arguments, all of which had legal merit and factual basis, were made in the context of 485 grams of cocaine attributed to him. Were, one, his close family ties, 11 1⁄2 years of employment, related good character traits, and his plan to permanently remain in Mexico on deportation demonstrated a lack of likeliness to reoffend. His early attempts to cooperate within four days of his arrest, acceptance of responsibility and sincere remorsefulness. Which the court agreed with the probation officer's recommendation to reduce the offense level for five levels because of acceptance and cooperation. Right. His sincere conduct constituted aberrant behavior given his otherwise lawful life, history of family, employment, no prior convictions, and safety valve eligibility. The deprivations he would suffer in serving his sentence in the BOP due to his deportable alien status. And the sentencing commission's then proposed guideline amendment that became effective November 1st, reducing by two levels the base offense level applicable to Mr. Miranda and consequently his guideline range by about six months. On that last point that you made, the court was not required to reduce because of a pending amendment because the court had to apply the guidelines in effect at the time of sentencing. Correct. But you would think that the sentencing judge would show some interest in the fact that the commission, who writes the guidelines and has gathered a lot of information on these drug guidelines, was proposing to reduce them as they had in the past twice before. So this was likely to come, and I even suggested at sentencing, that give us the benefit of the doubt on that and maybe not the entire reduction but split the difference. Some of the reduction. Was there a request made to continue the sentencing? No. Until the commission? Correct. Correct. But I think some of the judges at the time were already starting to honor that because they saw what was coming down the line. And there had been a lot of discussion in the media about that. And then our second argument is that the sentencing judge failed to make an individualized assessment of Mr. Miranda's case. And again, this court and the Supreme Court have made perfectly clear that at sentencing, the judge must make an individualized assessment of the defendant's case based on the facts presented. The sentencing judge did describe Mr. Miranda's drug quantity as, quote, relatively a small distribution of controlled substance, close quote. Then he failed to address Mr. Miranda's sentencing arguments and instead focused on two other considerations. First, the ills of the drug trade on society in general, which the judge described as, quote, the misery that's caused in our neighborhoods and in our cities by the sale of drugs. And second, what the judge called, quote, the case as a whole, close quote, which he further described as, quote, the magnitude of the entirety of what's going on here, close quote. And then speaking about all of the defendants in the case as a whole, the judge concluded, quote, together you're all, quote, ruining neighborhoods, families, and people. Yet there was no evidence in the record that Mr. Miranda was anything but a small part-time buyer acting on his own. He was not named in the conspiracy count. He periodically bought cocaine from one other defendant and knew only one or two of the other defendants charged in the indictment, and the government never argued otherwise. As this court forewarned in U.S. v. Cunningham, which I cite in our brief, the sentencing judge here succumbed to the temptation to impose a guideline sentence and be done with it without wading into the vague and prolix statutory factors. Proof of this is in the record, not only in words and the absence of words, but the very few minutes that the judge spoke before imposing a sentence. The judge spoke for approximately three and a half minutes before imposing, and I timed it by reading it on the transcript myself and giving him the benefit of the doubt. And this was reported on 57 lines, less than two and a half pages of transcript. In contrast, Mr. Miranda's sentencing memo was 26 pages long, comprising 16 pages of text, and nine exhibits including eight character letters and the sentencing commission's news release. My oral argument tracked the arguments in his sentencing memo, as shown in the record. Thus, Mr. Miranda was sentenced not on his own misconduct or on his mitigation arguments under 3553A for a lower sentence, but instead on the criminal misconduct of all of the 22 defendants in the case as a whole. The sentence also was unreasonable in that the sentencing judge imposed a 34-month sentence, which was in the middle of the applicable 30 to 37-month range, despite the fact that Mr. Miranda's record justified a low or below guideline sentence. He was charged with 485 grams of cocaine. He bought from a single defendant. He was not named in the conspiracy count. Within four days of his arrest, we sought to cooperate, subsequently met with the government, but he didn't know enough about the conspiracy, drug trafficking in general, or his co-defendants to get a deal. He's a first offender, no prior convictions, safety valve eligible, excellent employment record, including a strong character reference given to probation by his employer in Skokie, the Georgian nut company, strong family ties in Mexico, he would suffer deprivations serving his sentence in the BOP, little or no likelihood of recidivism or return to the U.S. after deportation. You recite all of that, which is interesting, and the only real curiosity, given all of this, good job, he's got supporting the family and surrounded by family, that he continues to do this for a year. And making money. I'm sure he knows darn well what he's doing wrong and getting away with it. And you look at it in hindsight and say, gee, that's tragic. This guy is a good guy, good family, and everything else, and yet he's doing this. I think that's sort of the way the judge looked at it, that was trying to say this is, you could call it aberrant behavior, but at the same time it's definitely criminal, and for a long period of time when he had every opportunity not to do this and no reason to do it. And there's no doubt about it. And he realizes that, and he realized that on his arrest and immediately tried to make amends. I called the U.S. Attorney's Office four days after the arrest, and he was a fellow who has never been in trouble before legally and didn't understand the court procedure, and he's illegal from Mexico. So he made a big jump by authorizing me to immediately contact, to go in, tell everything that happened, which we did. We didn't get in for a few months because I think they thought he wasn't a big fish. And he wasn't. He didn't know anybody. We made our statements. And these are efforts to mitigate his offense. There's no question. He committed an offense. He's wrong. He's embarrassed for his mother, knowing that he's in jail. I mean, this is a kid that came from a pretty decent family, and he was doing this part-time. But he's not responsible for what others were doing, and it seemed like the judge was imposing sentence based on his overall view of drug traffic in general and what the other defendants were doing. Who knows what that was. I'm not sure the judge even knew at that point because we were the second defendant sentenced in the case. All right. Thank you. I'll give you an extra minute. We asked you a lot of questions. All right. Ms. Bonamici. May it please the court. Counsel, good morning. Your Honor, anyone acquainted with the facts of this case would have known without being told why the district court rejected the defendant's arguments for a below-guideline sentence. The court made clear that it believed that a within-guideline sentence was absolutely necessary, those are his words, to afford deterrence, both specific and general, and provide just punishment. And so was this the second defendant sentenced as counsel represented? Pardon me? Was this the second defendant sentenced as counsel indicated? Yes, Your Honor, but there were substantial others that came. Because here I'm looking at the transcript at the sentencing, which is only three or four pages, and the court says he's familiar with the case, that he's taken into account the arguments of the lawyers in the defendant's statement and apology, and he basically says, I'm perplexed by this case, and then he talks about this case, that there are a number of part-time drug dealers, there are people who work, they have families, their lives, they feel it's appropriate in the midst of this to increase their income and help support their family by selling drugs. So that's his general statement about the case, and there's then nothing said specifically about this defendant. Well, actually, I think that a fair reading of the record is that those comments were directed at the defendant's particular situation because that was the point that had been raised by defense counsel, both in the papers and in his oral presentation. What we have here is the court's assessment that, just as Judge Mannion, as you pointed out, that this was an unusual situation because the defendant had maintained a job during this period, but his conduct carried over a complete year. He was purchasing and selling drugs every three weeks for an entire year, and the court found that that kind of conduct demonstrated, one, a complete lack of understanding or respect for the damage that his conduct was doing to the community, and also indicated that it was far more serious than perhaps the amount of drugs reflected. And by the way, the amount of drugs, while it's not the kind of numbers that we sometimes see living here in Chicago, it nevertheless was nearly a half a kilo of cocaine. It was not a tiny amount of cocaine. The defendant, in support of a lower sentence, did not focus on any one or two or three arguments, but rather raised 12 separate arguments, almost all of which were stock arguments. Arguments that this court has held are stock arguments that the court need not even address. Nevertheless, the court did get into the details of the defendant's conduct and expressed the view that his conduct, in particular that he had a job and was doing this part-time, was an aggravating rather than a mitigating factor, as the government had argued. The court clearly saw the case in that manner. Most of the arguments that the defendant made in support of a lower sentence were actually taken into account by the guidelines calculations. The fact that he had no prior convictions, the fact that he had qualified for a safety valve, all of those things the defendant actually did receive credit for. And a number of the arguments that he made, for example, the strong family ties and the attempts to cooperate and his plans to permanently reside, all of these things are specific arguments that this court has addressed in other cases as not requiring extensive discussion. This case was the subject of a fairly lengthy paper memoranda in the beginning or prior to sentencing, and it's not surprising that where the issues have been fully covered in briefs, that the court would not go on and on repeating everything that had been said in the briefs, and it's not required that the court do that. Here the court made very clear that when it was talking about the seriousness of the offense, it was talking about the defendant's conduct, the defendant's conduct which lasted for a year, the amount of drugs which was not enormous based on what the court had been presented with in other cases, but nevertheless not insubstantial. The fact that the defendant had engaged in this conduct despite the harm that it was causing, merely to make extra money that arguably he did not need since he did have other employment. These were all points that the district court made, so to say that the court did not make an individualized assessment is really unfair. The defendant's other arguments rest primarily on misinterpretations, I would say, of the court's comments, and given that the defendant did not really raise any principal arguments, this court's case law would make clear that it was not improper for the court to talk about the evidence and its reasons for sentencing in a more global and generic way. In doing that, the district court made very clear the reasons why it had chosen a sentence that was within the guidelines and thus entitled to a presumption of reasonableness. I have one curious question, and that is there were a lot of related defendants, I guess, in this case. Yes. Not necessarily, he wasn't a co-conspirator apparently. He was not a co-conspirator, but the evidence demonstrated that the person he was buying from was the head of the organization, and the people he knew were people who were very high up in the organization. Were there any other people in his level that were sentenced? I'm just kind of curious about a comparative situation with other people who may have committed, in this same operation, may have committed a similar crime, or was he unique in his family ties and good job and all that stuff? He was not unique in that sense. As the district court indicated, there were others who were part-timers, so to speak. Did they get a similar sentence? That I can't tell you. Okay, I said that's a curious question. If you don't know, then I just can't. Yes, and I didn't handle this case below, but this was a very large investigation, and this was somebody who was caught as part of the conduct that was being observed but was not charged as being one of the primary actors. He was charged and convicted and pled guilty to and was sentenced solely based on his own conduct. If the court has no further questions, then the government would request that the defendant's sentence and conviction be affirmed. All right, thank you. I'll give you one minute. Thank you. In response to Judge Mannion's question, these were not related defendants. Mr. Miranda knew the, so happened to be the lead defendant because he was trying to buy a car from him. That's how he, and one thing led to another, and he started buying drugs from him. And he knew a couple of his relatives who were also named, but he didn't know anybody else. In terms of the arguments, this court has defined principal arguments as arguments with colorable legal merit and factual basis. In support of all of my arguments, I cited Supreme Court and Court of Appeals decisions, some of which were Seventh Circuit, most of which were Seventh Circuit decisions, in which sentencing judges had reduced sentences or the appellate court suggested that these were considerations that could be factored in in reducing sentences. So these are principal arguments, as this court have defined them, and it's the government with their stock argument on appeal that always comes in and says, oh, they're just stock arguments. One other thing, that if the court would be inclined to reverse and remand this case, I would ask that the court would act on that fairly promptly because Mr. Miranda Camarena is due for release in May, and there was a little procedural problem that arose during the course of the briefing of the case where the case was first combined with another case, and then I moved to decombine the cases, and before I could move to expedite the argument, the date for argument was set. So I moved to expedite, but the chief judge said in a short order that when the date is set, the argument's not going to be expedited. So we lost a little time in that way. The timing on that other case? Well, it was just one of the other defendants in the case that appealed, and then he asked for a new attorney, so that was going nowhere, and if our case was tied to that, we'd never get a prompt argument. We'll rush. Okay. I know that's being presumptuous on my part, but I think I need to inform you. No, no, no. I mean, it's good you alerted us. And the other thing is, to Judge Mannion's question, I did find out what the first defendant was sentenced to, and he was an older guy, kind of the same arguments, good family, blah, blah, blah. He got the low end of the guideline range. Now, I only found that out because the sentencing judge seems to be noted for slowly entering the judgment orders. So until that happened, I didn't know what the sentence was going to be, and that was well into the briefing of the case. Some of us are faster than others, but this time we'll go very rapidly. All right. Thank you.